

# NUMBER 13-11-00115-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**THE STATE OF TEXAS,**                                                **Appellant,**

**v.**

**DANIEL ZALMAN,**                                                  **Appellee.**

---

### On appeal from the County Court
### of Wharton County, Texas.

---

# MEMORANDUM OPINION
### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

The appellant, the State of Texas, contends the trial court erred when it granted a motion for new trial in a driving while intoxicated case. *See* TEX. PENAL CODE ANN. § 49.04 (West 2011). By two issues, the State argues that the trial court abused its discretion when: (1) the visiting judge granted a new trial based on untimely arguments not raised in appellee, Daniel Zalman's, initial motion for a new trial and (2) when it

granted Zalman's motion for new trial "in the interest of justice."  We affirm.

## I.  BACKGROUND

A jury found Zalman guilty of driving while intoxicated on December 8, 2010. *See id.*  He was sentenced to 180 days in county jail but the sentence was probated for twelve months pursuant to an agreement between the parties.  On January 4, 2011, Zalman filed a motion for new trial on grounds that "the verdict in this cause [was] contrary to the law and the evidence."  The motion was neither supported by an affidavit, nor citations to any specific portions of the trial court record.

The trial judge who originally heard Zalman's case, the Honorable Judge John Murrile, retired at the end of 2010.  The Honorable Judge Philip Spenrath, who subsequently assumed the bench, then recused himself from the matter.[1]  The presiding judge of the administrative judicial district, the Honorable Olen Underwood, therefore appointed a visiting judge, the Honorable Susan Lowery, to hear the motion. Although an initial hearing date was set, Zalman's attorney visited Judge Lowery in her home courtroom in Wharton County to obtain a new hearing date.  While discussing the re-setting of the hearing, Judge Lowery requested that the parties file a "memorandum of law" on the motion for new trial to help familiarize herself with the case.  No attorney from the State was present, and apparently the State was never notified of this request.

Zalman's "Memorandum of Law in Support of Court Granting Defendant's Motion for New Trial" was filed on February 17, 2011, one day before the hearing.  It set forth four bases, previously argued in both pre-trial and trial motions, regarding why the

_____

[1] The record showed that appellee, Daniel Zalman, was a contributor to Judge Spenrath's judicial campaign.

2

motion for new trial was "contrary to the law and evidence." First, Zalman argued that police officers did not have a reasonable suspicion to initially pull Zalman over.[2] Second, Zalman argued that the "blood warrant" for his arrest was improper because it was not signed by a licensed attorney. Third, Zalman contended that the circumstances under which his blood specimen was taken were unhygienic and unsanitary, as he alleged there were cockroaches and a cricket in the room. One cockroach, he claimed, even crawled up his arm during the blood draw. Fourth, Zalman argued that his search warrant affidavit was flawed because it lacked a date or time.

The State vehemently protested the filing of the Memorandum of Law at the hearing on February 18, 2011 and argued that it was an untimely-filed amended motion for new trial. The State contended that "the motion present[ed] . . . new grounds outside the 30-day time period for motion[s] for new trial." The trial court explained that it had requested memorandum from both sides for its own purposes, apologized that the State had not received notice of this request, and offered the State time to respond to Zalman's memorandum. The State refused. The hearing proceeded, during which Zalman's attorneys referred to portions of the trial testimony offered into evidence which supported their request for a new trial and the four bases elaborated upon in Zalman's memorandum. After the hearing, Judge Lowery stated:

> I do not have before me the search warrant or any of the evidentiary

---

[2] According to testimony, Zalman momentarily fell asleep while at a Whataburger drive-thru at 2 a.m. Two off-duty security guards, who were police officers, were informed by a Whataburger employee that the drive-thru line was not moving. The security guards called local police to investigate, but no criminal activity was reported. When the security guards approached the vehicle, Zalman's wife, who was apparently texting on her cell phone while sitting in the passenger seat, nudged him awake. Zalman awoke and proceeded through the line to pay for their food order. As Zalman was leaving the drive-thru, police officers arrived and pulled him over. Zalman was subsequently arrested on suspicion of driving while intoxicated.

matters or seen a DVD. In fact, the first time I saw the transcripts was when I walked in the courtroom a moment ago. However, listening to what I'm hearing—and both of you have done an outstanding job—in the interest of justice, I will order a new trial in this case and let these matters be sorted out by a different judge at a different time.

After granting the motion for new trial, the State requested Findings of Fact and Conclusions of Law. The trial court complied. In the case's "Procedural History," the trial court noted that it heard "no evidence from witnesses, nor was [it] provided with a transcript of the pre-trial matters and the trial until the time of hearing." The court explained instead that it "heard only the arguments of counsel and portions of the prior records that were read by counsel during their arguments." The court also noted that Zalman's motion to suppress the results of his blood test was the subject of different pre-trial rulings. The trial court's "Findings of Fact" follow:

1.  Visiting Judge Susan Lowery was appointed to hear the Motion for New Trial.

2.  The visiting judge did not have the opportunity to review the clerk's folder, the trial exhibits, or a record of pretrial or trial proceedings prior to the hearing.

3.  This Court finds that the Whataburger manager's report of a customer not quickly pulling forward at the drive-thru to receive his order was not a report of criminal activity.

4.  This Court finds that the Blood Search Warrant was not signed by a licensed Texas attorney nor was the judge hearing the suppression issues a licensed attorney.

5.  This Court finds that there are legitimate issues concerning the blood draw as to whether the place where the blood was taken was sanitary due to the infestation of insects; whether two samples were taken or the original sample was contaminated; and whether the proper medical safeguards were taken.

6.  This Court finds that there is a legitimate concern as whether the

4

Search Warrant Affidavit was stale because the affidavit did not state the time which the witness observed Mr. Zalman and used the "on or about" language. This forced the magistrate to look beyond the four corners of the affidavit to establish sufficient facts to establish enough probable cause to issue a search warrant.

7. The Court finds that there is a legitimate concern as to the sufficiency and specific of the Search Warrant affidavit and that the Search Warrant should have been suppressed. There is no specific location in the Affidavit for the Search Warrant other than Wharton County, Texas. There is more than one Whataburger in Wharton County, Texas. There is no specific time given as to when the witness observed the Defendant or where he was when he observed him or when he reported such.

8. The Court further finds through admissions of both the State and the Defendant that the place where Defendant's blood was drawn was infested with insects and that the video of the blood draw shows a bug crawling down Defendant's sleeve.

The trial court also filed the following related "Conclusions of Law":

1. This Court has jurisdiction over the parties, the subject matter, and retains the power to grant a new trial in the interest of justice void any abuse of discretion.

2. This Court finds Mr. Zalman's motion was sufficient to hold a hearing for a new trial by articulating that the judgment was contrary to law and the evidence and/or the judgment was invalid for some other reason.

3. This Court finds that the officers that initially stopped Mr. Zalman lacked reasonable suspicion that Mr. Zalman was committing an illegal activity before they stopped him. This is a violation of Mr. Zalman's Fourth Amendment rights against unreasonable searches and seizures.

4. This Court finds that the Search Warrant Affidavit is alleged to have forced the magistrate to go beyond the four corners of the affidavit and therefore violated Mr. Zalman's Fourth Amendment rights against unreasonable searches and seizures, and in violation of Chapter 18 of the Texas Code of Criminal Procedure.

5. This Court finds that place where the blood was taken violated his

5

Fourth Amendment rights against unreasonable searches and seizures because the insects marked the room unsanitary and void of any generally accepted medical practices of drawing blood in a sterile medical environment.

6.     This Court finds that the Code of Criminal Procedure Art. 18.01(j) requires a licensed Texas attorney judge to sign the blood search warrant. Judge Kubicek is not a licensed Texas attorney. Therefore, the search warrant fails because the State did not follow the proper procedure as clearly stated within the Code.

7.     The Court finds due to the totality of the circumstances the results of the blood draw should be suppressed.

8.     This Court finds that all wrongful evidence obtained against Mr. Zalman by the officers and presented to the jury at this first trial may have violated Art. 38.23 of the Code of Criminal Procedure.

9.     This Court finds that Mr. Zalman's first trial prejudiced his substantial rights that resulted in a miscarriage of justice.

The State appealed.

## II.     STANDARD OF REVIEW AND APPLICABLE LAW

Texas Rule of Appellate Procedure 21 deals with motions for new trials. TEX. R. APP. P. 21.4. Rule 21.4 provides that persons must file their motion for new trial and any amendments thereto no later than thirty days after the trial court imposes sentence in court. TEX. R. APP. P. 21.4. Once the thirty-day window has passed, a defendant may not amend his motion for new trial even with a trial court's leave. *See State v. Moore*, 225 S.W.3d 556, 558 (Tex. Crim. App. 2007).

An appellate court reviews a trial court's granting or denial of a motion for new trial under an abuse of discretion standard. *Holden v. State,* 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). As an appellate court, "we do not substitute our judgment for that of the trial court; rather, we

6

decide whether the trial court's decision was arbitrary or unreasonable." *Holden,* 201 S.W.3d at 763. A trial court abuses its discretion only when no reasonable view of the record could support the trial court's ruling. *Id.* "A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law." *State v. Herndon,* 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). A judge "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or 'received a raw deal.'" *Id.*

In *Herndon,* the court of criminal appeals established that a trial court would avoid an abuse of discretion ruling when granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in rule 44.2 of the Texas Rules of Appellate Procedure. *Id.* at 901; *see* TEX. R. APP. P. 44.2.

### III. DISCUSSION

### A. Arguments in the Motion for New Trial

By its first issue, the State contends that the trial court abused its discretion when it granted a new trial based on untimely arguments not raised in Zalman's initial motion for a new trial. The State argues that Zalman's initial motion was inadequate because it only stated that the verdict was "contrary to the law and the evidence," and his "Memorandum of Law" was an untimely amendment to the motion for new trial. The State asserted that, under Texas Rule of Appellate Procedure 21.4, no amendments to a motion for new trial could be made after the thirty days following sentencing. *See* TEX.

7

R. App. P. 21.4; *see also Moore*, 225 S.W.3d at 558.

Here, assuming without deciding that Zalman's "Memorandum of Law" was in fact an amended motion for new trial and thus disregarding it as untimely, we find that the trial court did not abuse its discretion in ordering a new trial. The facts of this case meet the *Herndon* three-part test. First, Zalman "articulated a valid legal claim in his motion" by stating that "the verdict in this cause [was] contrary to the law and the evidence." *See Herndon*, 215 S.W.3d at 901. This sentence sets forth a sufficient legal claim. *See* Tex. R. App. P. 21.9(a) (providing that "a court must grant a new trial when it has found a meritorious ground for new trial").

Second, Zalman's attorneys "produced evidence or pointed to evidence in the trial record that substantiated his legal claim." *Herndon*, 215 S.W.3d at 901. For example, Zalman's counsel cited to portions of Trooper Jose Mena's trial testimony to buttress Zalman's argument that there was no reasonable suspicion or alleged criminal activity to pull him over. *See Crain v. Texas*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (holding that an officer may not detain a motorist without a showing of reasonable suspicion). Zalman's counsel also referenced that the blood warrant was admitted into evidence, noted its lack of a date or time, and the fact that it was not signed by a licensed attorney. *See* Tex. Code Crim. Proc. Ann. art. 18.01(c), (j) (West Supp. 2011) (establishing the requirements necessary for issuing a proper search warrant). Zalman's attorney further pointed out that a video of Zalman's blood draw was admitted into evidence, which allegedly showed the unsanitary conditions under which the draw was taken.

Zalman's arguments about the arrest and his blood warrant sustain his assertion

8

that the verdict was "contrary to the law and evidence." The multiple references to trial testimony, documents offered into evidence, and the blood draw video provided the evidence necessary to support Zalman's legal claim under *Herndon*. *See* 215 S.W.3d at 901; TEX. R. APP. P. 21.7 (outlining the types of evidence a court can consider at a hearing on a motion for new trial). All of this evidence was within the court's record—the trial court did not consider evidence outside the record or evidence that was untimely filed.

Third, we conclude that there was sufficient evidence to question whether, through all the evidence presented, there was prejudice to Zalman's substantial rights under the standards in rule 44.2 of the Texas Rules of Appellate Procedure. *See Herndon*, 215 S.W.3d at 901. This rule provides that "if the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See* TEX. R. APP. P. 44.2. The circumstances surrounding Zalman's arrest, the issuance of his blood warrant, and his blood draw all potentially implicate constitutional rights. *See Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982) (holding that "the taking of a blood sample is a search and seizure under both the federal and Texas constitutions").

Even disregarding Zalman's "Memorandum of Law," we conclude that Zalman's attorneys presented sufficient evidence at the hearing on the motion for new trial to meet the *Herndon* three-part test. *See Herndon*, 215 S.W.3d at 901; TEX. R. APP. P. 21.7.

9

Accordingly, the trial court did not abuse its discretion in granting the motion. *See Herndon*, 215 S.W.3d at 901.

The State cites *Curcuru v. State* to support its argument that the motion for new trial was improperly granted. *See* 13-08-00734-CR, 2010 Tex. App. LEXIS 9748, at **10–11 (Tex. App.—Corpus Christi Dec. 9, 2010, no pet.) (mem. op., not designated for publication). The facts of *Curcuru*, however, are distinguishable from the facts of this case. In *Curcuru*, the defendant timely filed a motion for new trial. *See id.* at *30. His motion included several arguments, like ineffective assistance of counsel, which were based on matters outside the trial record. *Id.* Curcuru did not include any evidence to support these arguments. *Id.* Curcuru later filed an untimely amended motion for new trial which included evidence in the form of several affidavits to support his argument. *Id.* The trial court properly refused to consider the late affidavits. *Id.* "Texas courts . . . have long held that when the grounds for a new trial are *outside* the record, a defendant must support his motion by. . . affidavit." *Id.* at *31 (citing *Klapesky v. State*, 256 S.W.3d 442, 454 (Tex. App.—San Antonio 2008, pet. ref'd) (emphasis added)).

The basis for Zalman's motion for a new trial, on the other hand, is that the verdict was "contrary to the law and evidence." Zalman's ground for a new trial is essentially one of sufficiency, which is allowed under Texas Rule of Appellate Procedure 21.3(h). *See* TEX. R. APP. P. 21.3(h). Importantly, Zalman's basis was already rooted *within* the court's record. The arguments Zalman asserted at the hearing on the motion for new trial about his illegal arrest and improper blood draw were not outside the record,

10

thus making *Curcuru* inapplicable.

We overrule the State's first issue.

**B.     In the Interest of Justice**

By its second issue, the State argues the trial court erred when it granted Zalman's motion for new trial in the "interest of justice."   A trial judge has discretion to grant or deny a motion for new trial "in the interest of justice."   *Herndon*, 215 S.W.3d at 906-07.   "Justice" means "in accordance with the law."   *Id*.   "A court must grant a new trial when it has found a meritorious ground for new trial."   TEX. R. APP. P. 21.9.

The trial court conducted a full hearing wherein it considered the motion, evidence from the trial record, and heard arguments of counsel.   The trial court later entered multiple findings of fact and conclusions of law which supported its decision to grant a new trial.    A trial court abuses its discretion only when no reasonable view of the record could support the trial court's ruling.   *Holden,* 201 S.W.3d at 763.   We do not find that to be the case here.

Because the trial court granted the new trial in accordance with the *Herndon* three-part test and explained the basis for its decision, the new trial was "in accordance with the law," and the trial court did not abuse its discretion in granting a new trial in the "interest of justice."   *Herndon*, 215 S.W.3d at 906–07.   We overrule the State's second issue.

**C.     Response to Dissent**

The dissent ignores the majority opinion's assertion that we did not consider the memorandum of law filed by Zalman one day before the hearing on the motion for new

11

trial. As stated previously, we disregarded this memorandum in its totality. Instead, we considered only the timely filed motion for new trial and the arguments of counsel and evidence proffered at the hearing in our analysis.

Further, the dissent is mistaken when it proclaims that the majority contradicts *Cueva v. State*. 339 S.W.3d 839, 858–59 (Tex. App.—Corpus Christi 2011, pet ref'd). *Cueva* is distinguishable from the underlying case. In *Cueva*, Cueva timely filed a motion for new trial stating that his counsel was ineffective for several reasons. *Id*. at 854. Cueva later filed an untimely amendment to his motion, along with affidavit evidence, setting forth new grounds why he believed his attorney was ineffective. *Id*. The appellate court held that the trial court erred when it improperly considered the new grounds and new evidence. *Id*. These circumstances did not occur here. In the underlying case, the trial court heard issues "contrary to the law and the evidence" regarding the initial arrest, blood warrant, and blood draw that were *already in the trial record*. Even if Zalman had never filed his memorandum of law at Judge Lowery's request, he would have had the right to argue all of the points made within it at the hearing. *See generally Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994) (en banc) (setting out that "the purpose of the hearing is for a defendant to fully develop the issues raised in the motion for new trial").

Finally, the dissent never explains how the trial court abused its discretion in granting the motion for new trial. *See State v. Moreno*, 297 S.W.3d 512, 520 (Tex. Crim. App. 2009) ("the granting of a new trial rests within the sound discretion of the trial court"); *Holden,* 201 S.W.3d at 763. The trial court had a timely motion before it which

argued that a new trial was necessary because the verdict was "contrary to the law and evidence." This is a sufficient ground for a new trial. *See* TEX. R. APP. P. 21.3(h); *Castleberry v. State*, 646 S.W.2d 599, 601 (Tex. App.—Houston [1st Dist.] 1983), *overruled on other grounds* at 704 S.W.2d 21 (Tex. Crim. App. 1986); *see also Bonner v. State*, No. 01-04-00611-CR, 2005 Tex. App. LEXIS 5874, at **7–8 (Tex. App.—Houston [1st Dist.] July 28, 2005, pet. ref'd). At the hearing on the motion, the trial court heard arguments previously made at both the pre-trial and trial levels, and considered evidence already admitted into the record. *Compare Cueva*, 339 S.W.3d at 839 (concluding that it was improper for the trial court to consider evidence that was untimely filed and that was not in the trial court's record). The trial court then filed conclusions of law holding that Zalman's Fourth Amendment rights were violated because: the officers that initially stopped Zalman lacked reasonable suspicion that Zalman was committing an illegal activity before they stopped him; the search warrant affidavit forced the magistrate to go beyond the four corners of the affidavit; Zalman's blood draw was unsanitary and void of any generally accepted medical practices; and the search warrant was not issued in compliance with the Texas Code of Criminal Procedure.

"An appellate court is not to substitute its judgment for that of the trial court; rather the appellate court's role is to examine the record to determine whether the trial court granted a new trial without reference to any guiding rules or principles. . . ." *Moreno*, 297 S.W.3d at 520. The record shows that the trial court's decision to grant a new trial "in the interest of justice," after listening to the evidence presented at the hearing, was founded within the record and grounded in Fourth Amendment concerns. *See*

13

*Herndon*, 215 S.W.3d at 909 ("For more than one hundred and twenty years, our trial judges have had the discretion to grant new trials in the interest of justice."). We fail to see how the trial court abused its discretion in this regard.

## IV. CONCLUSION

Having overruled all of the State's issues, we affirm the trial court's order to grant a new trial in this matter.

_____
GINA M. BENAVIDES,
Justice

Dissenting Memorandum Opinion by Justice Gregory T. Perkes.

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
31st day of August, 2012.

14